Nathan B. Sobel, J.
Defendant moves to dismiss indictment. I have examined the Grand Jury minutes.
The charge is manslaughter second degree. The alleged crime was committed while the defendant was a duly committed patient in the Brooklyn State Hospital. He has been such a patient on and off for a period of 10 years. On the date of the alleged crime to wit, June 8, 1955, he was diagnosed as a “ dementia praecox, catatonic type ”.
One of the witnesses, a guard at the institution, states he saw the defendant “either hit or push the patient, Max'Oster, thereby knocking him to the floor.” Another guard states “ I saw Stanley Bussell hit Max Oster and knock him on the floor.” Both guards testify that this occurred while the ward patients were walking through the hall on the way to lunch. There was no quarrel between the patients, nor words exchanged. They always appeared to be friendly.
The testimony establishes that the deceased, Max Oster, struck his head on a bench or on the floor. Four days after the fall, on June 12,1955, he was taken to Kings County Hospital. There he was diagnosed as suffering from a condition which may or may not have resulted from the fall. He improved until June 23, 1955. On that day as a result of tests, it was decided to operate. The doctor testifies “ At the operation there was no fracture of the skull noted and the X-ray report of the skull, Beport H 137214, the skull shows no evidence of fracture, basal projection was not made, chest showed no recent pulmonary or repleural pathology, the heart is enlarged and shows a hypertensive configuration.” The doctor when asked whether the condition found on the operation could have been caused by a man’s head coming in contact with the floor or any other object, answered — “It could possibly be caused.” “ That could be one of the causes ”. On July 8, two weeks after the operation, the patient died.
The medical examiner was equally vague. He found a tumor, pneumonia and a hemorrhage. But it is quite evident that he could not give the cause of death.
This defendant can never in my opinion be brought to trial. He quite evidently does not now, or in the future will be able to, understand the nature of these proceedings. However, as a result of this indictment, he cannot be treated in a State hospital under mental hygiene. He must be committed to *1023 Matteawan, if this indictment is permitted to stand, and in all likelihood spend the rest of his life there.
This is the first indictment which has come to my attention of a patient in a State hospital. Fights and assaults are commonplace particularly in the disturbed wards, but it has never been a policy to indict.
Of course, there is no duty on the People to establish the sanity of a defendant before a grand jury. There is a presumption of sanity. However, where evidence is introduced before the grand jury to show a legal commitment and a diagnosis of dementia praecox, the testifying doctors should at least have been asked whether the defendant was in their opinion legally sane pursuant to the standards prescribed by section 1120 of the Penal Law. This was not done.
However, it is quite clear as a matter of law that any degree of mental illness affects the intent with which an act is committed. I rule that there is insufficient evidence as a matter of law, to establish that there was in this case an assault, i.e., an intentional push or blow. From the testimony of the guards the push or blow could have been accidental or intentional. When this testimony is weighed with the testimony concerning the defendant’s mental condition, it is insufficient as a matter of law, to establish a prima facie assault.
I also find that there is insufficient evidence as a matter of law, to establish that the assault, if any, was a direct or even indirect producing cause of death.
The indictment is dismissed. Submit order.